**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charley Johnson, | No. CV-22-01339-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, *et al.*, | |
| Defendants. | |

At issue is Plaintiff Charley Johnson's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 33, "MSJ"), to which Defendants filed an Answering Brief (Doc. 39, "Defs.' Br.") and Plaintiff filed a Reply (Doc. 40, "Reply"). The Court finds the Motion appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the following reasons, the Court denies Plaintiff's Motion, grants summary judgment in favor of Defendants, and dismisses this case.

**I.    BACKGROUND**

In 2006, Plaintiff purchased about twenty-one acres of land in Gila County, Arizona. (Doc. 1, "Compl." ¶ 10.) The purchased land seemingly included a house, a well, corrals, and other related ranch structures. (Compl. ¶ 13.) Unbeknownst to Plaintiff, however, those improvements were located on National Forest System ("NFS") land. (Compl. ¶¶ 11–13.) Plaintiff only learned of this when his neighbor conducted a property survey in 2007, which revealed that the northern boundary of Plaintiff's land was farther south than Plaintiff had believed it to be. (Compl. ¶¶ 16.)

To acquire the land containing the improvements, Plaintiff proposed to the United States Forest Service ("USFS") that he purchase six to eight acres of NFS land under the Small Tracts Act ("STA"). After discussing the matter with Plaintiff intermittently for about a decade, the USFS eventually determined that the encroachments would be best resolved by Plaintiff purchasing only the land containing the house, barn, and well, which amounted to 0.59 acres. (Doc. 34-8 at 42.) The USFS declined to convey the land containing most of the corrals because the corrals were "authorized range improvements" that were "not in trespass." (Doc. 34-4 at 43, 47.) The USFS reasoned that this sale would convey the minimum necessary to resolve the encroachments, and Plaintiff could continue to use the corrals and other range improvements under the USFS permits that Plaintiff already had. (Doc. 34-8 at 42.) In 2020, Plaintiff agreed to purchase the 0.59 acres.

To determine the purchase price of the land, the USFS sought an appraisal. (Doc. 34-2 at 5.) The appraiser was to appraise the NFS land as if it were zoned consistently with non-federal property, and the appraiser concluded that, under the Gila County Zoning and Development Code, the consistent zoning for the land would be for single-family residences. (Doc. 34-2 at 5, 21.) The appraiser determined that the land's highest and best use was "rural residential and agricultural" or "single-family rural residential." (Doc. 34-2 at 9, 24.) The appraiser then identified six recent sales of somewhat similar residential lots near the area, noting that "sales activity in the subject area is extremely limited" and there is "little data" on the market. (Doc. 34-2 at 39, 41.) The appraiser compared the land for purchase to the six comparable lots, adjusted for any relevant differences, and valued the land for purchase at $27,000. (Doc. 34-2 at 40–42.) A review appraisal found the appraisal to be "compliant with standards" and approved of the appraisal's conclusion. (Doc. 34-8 at 2.) In 2022, Plaintiff purchased the land from the United States for $27,000. (Doc. 34-10 at 56–59.)

Plaintiff then initiated this action under the Administrative Procedures Act ("APA"), alleging that Defendants acted arbitrarily and capriciously in denying his request to purchase a larger plot of land and in accepting the value set forth in the appraisal. (Compl.)

Plaintiff now moves for summary judgment on those claims. Defendants oppose the motion and, in their brief, ask the Court to grant judgment in their favor and dismiss this case.

## II.   LEGAL STANDARD

The APA provides that a district court may review agency action. 5 U.S.C. § 706. If the court finds that an agency's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the court may reverse or set aside the decision. 5 U.S.C. § 706(2)(A). The standard of review under the APA is deferential, and the court is not empowered to substitute its judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983). When reviewing an agency action, "the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). For an agency decision to be upheld, the agency must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

A motion for summary judgment may be used to review agency administrative decisions within the limitations of the APA. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). And a motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether to grant summary judgment in an APA challenge, the district court "is not required to resolve any facts" but rather must "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985).

## III.   ANALYSIS

### A.   The Modification of Plaintiff's STA Application

Plaintiff originally proposed to purchase six to eight acres of NFS land under the STA, which provides that "[t]he Secretary [of Agriculture] is authorized, when the

Secretary determines it to be in the public interest, to sell, exchange, or interchange" NFS land. 16 U.S.C. § 521d(a)(1). Defendants ultimately modified Plaintiff's proposal and sold only 0.59 acres. Plaintiff challenges that modification on the grounds that the reduction was arbitrary and capricious. (MSJ at 3–10.) Defendants respond that judicial review is unavailable under the APA because the STA is a permissive statute and add that, even if judicial review is available, Defendants' actions were reasonable. (Defs.' Br. at 5–8.)

Although the APA generally allows for judicial review, it precludes judicial review of agency decisions when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). However, "the exception for action 'committed to agency discretion' . . . is a very narrow exception." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105–06 (1977). To determine whether agency action is excepted from judicial review under 5 U.S.C. § 701(a)(2), a court must determine whether the discretionary power at issue is so broad "that the court cannot discern from the language of the statute, or from legislative intent, a legal basis upon which to review the Secretary's exercise of his discretion." *Strickland v. Morton*, 519 F.2d 467, 468 (9th Cir. 1975).

Defendants assert that the STA falls under the second exception because it commits action to agency discretion. Specifically, Defendants argue that the STA permits a land transaction solely "when the Secretary determines it to be in the public interest," 16 U.S.C. § 521d(a)(1), and the Secretary's regulations clarify that "[t]he sale, exchange, or interchange of lands . . . under these rules are discretionary," 36 C.F.R. § 254.35(e).

Defendants are correct that the statute grants the Secretary discretion to determine when to transfer land, but that discretion is not unfettered. The regulations set forth seven factors for the USFS to consider when determining whether the public interest will be served by a conveyance of NFS land. 36 C.F.R. § 254.36(c); *see also* 16 U.S.C. § 521h(1) (requiring the Secretary to issue regulations specifying criteria for determining what constitutes the public interest). And the regulations further provide five factors for the

USFS to consider "when determining whether to convey lands upon which encroachments exist." 36 C.F.R. § 254.32(c). Thus, although the STA leaves much to the Secretary's discretion, it is not "drawn in such broad terms that in a given case there is no law to apply." *See Citizens to Preserve Overton Park*, 401 U.S. at 410. The STA therefore provides substantial law upon which a court can review the agency's decisions.[1] Still, judicial review of agency action under the STA is necessarily limited to the select few provisions in the STA and its accompanying regulations that are mandatory. *See, e.g.*, 16 U.S.C. § 521d(a)(1) (requiring that transfers be in the public interest); 36 C.F.R. § 254.32(c) (requiring USFS to consider factors when determining whether to convey land); 36 C.F.R. § 254.35 (placing certain limitations on land transfers). Aside from such provisions, the regulations make clear that transfers under the STA "are discretionary." 36 C.F.R. § 254.35(e). And notably, nothing in the STA entitles any applicant to the acquisition of NFS land.

Plaintiff appears to understand that he is not entitled to any specific purchase—he clarifies that he "is not arguing that the Forest Service should have sold him eight acres of land." (Reply at 11.) Rather, Plaintiff argues that the partial denial of his application and the decision to exclude a portion of the corrals were arbitrary and capricious. (MSJ at 5.) Plaintiff focuses his arguments on whether the corrals were "encroachments" in "trespass" and whether he had notice of any encroachment based on certain grazing permits. (MSJ at 5–8.) But these arguments are inapposite because Plaintiff does not argue that Defendants failed to comply with a mandatory provision of the STA or the regulations. In fact, Plaintiff acknowledges that Defendants "appropriately concluded that the disposal of 0.59 acres of Forest Service land was in the public interest." (MSJ at 4.) The administrative record also shows that Defendants considered the five factors set forth in 36 C.F.R. § 254.32(c) that they were required to consider "when determining whether to convey lands upon which encroachments exist." (Doc. 34-9 at 5.) Furthermore, Defendants explained to Plaintiff that

---

[1] At least one appellate court has reviewed a USFS decision to exchange land under the STA. *See Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012 (10th Cir. 2002).

they were reducing the land for sale to 0.59 acres because that was the "minimum necessary" to resolve the encroachments, which is precisely what is required by regulation. *See* 36 C.F.R. § 254.35(g) ("The area of land conveyed shall be limited to the minimum necessary to resolve encroachment.").

Plaintiff's arguments thus fall outside the scope of the court's review. Because Plaintiff fails to identify any mandatory provision that Defendants failed to adhere to when electing to reduce the amount of land for sale, the Court cannot conclude that Defendants acted beyond the bounds of the discretion granted to them by law.

### B.     The Appraisal

Plaintiff also argues that Defendants acted arbitrarily and capriciously by relying on an appraisal that failed to comply with the Uniform Appraisal Standards for Federal Land Acquisition ("UASFLA"). More specifically, he argues that the appraiser erred in determining the highest and best use, selecting a consistent zoning, and finding comparable land sales, and the appraiser failed to consider that the land for sale is "landlocked." (MSJ at 11–15.)

The regulations provide that the valuation of tracts for sale under the STA shall be determined "by recognized appraisal methods following Forest Service appraisal procedures and the [UASFLA]." 36 C.F.R. § 254.2(b). According to the UASFLA, an appraiser must determine the land's "highest and best use," which is "[t]he highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonable future." (Doc. 34-9 at 40.) To make this determination, appraisers must analyze four "tests," ensuring that the highest and best use is physically possible, legally permissible, financially feasible, and results in the highest value. (Doc. 34-9 at 40–41.) The appraiser then determines the land's value using one of several methods. The "preferred method"—and the one used here—is the "sales comparison approach." (Doc. 34-9 at 44.) This method requires the appraiser to "study the market for sales of properties with the same highest and best use as the subject property that are as close in proximity and time as possible." (Doc. 34-9 at 44.) Each comparable sale is then "adjusted for elements that are

different from the subject property and the resulting array of sales data is reconciled to a final opinion of market value." (Doc. 34-9 at 44.)

In the appraisal report here, the appraiser analyzed the four tests and determined that the highest and best use for the tract was "rural residential and agricultural use." (Doc. 34-2 at 24.) But in the report's "executive summary," the appraiser stated that the highest and best use was "single-family rural residential." (Doc. 34-2 at 9.) Plaintiff challenges the latter characterization, arguing that the appraiser failed to consider the reasonable probable future use of the 0.59 acres, which he states is "rural residential and agricultural." (MSJ at 12–13.) The appraiser, however, considered that "[t]he most probable buyer and user of the subject tracts would be an individual or family interested in developing a single-family residence with ancillary agricultural uses." (Doc. 34-2 at 24.)

Plaintiff also takes issue with the appraiser appraising the land as if it were zoned for single-family residences. (MSJ at 13–14.) He suggests that a "more appropriate zoning" would have been "rural residential" or "general rural," and he contends that the appraiser should have considered "more appropriate comparables that were in areas zoned for rural residential or general rural." (MSJ at 13–14.) However, Plaintiff does not show that the appraiser's zoning was necessarily incorrect, nor does he demonstrate that his preferred zoning was even possible.[2] And although he suggests that there is "nearby property that is similarly zoned," he does not specifically identify any such properties, nor do any appear in the administrative record. (MSJ at 13.) Moreover, the appraiser noted that "[f]or rural properties with potential residential use, the market is limited to very specific areas and there is little data," adding that "sales activity in the subject area is extremely limited, with an average of three sales of rural residential lots annually over the past ten years." (Doc. 34-2 at 39.) This suggests that Plaintiff's wish for "more appropriate comparables" may not have been feasible, and he makes no showing to the contrary. Furthermore, the

---

[2] The Court "is not required to resolve any facts" in ruling on this Motion, *Occidental Eng'g Co.*, 753 F.2d at 769, but the Court notes that the Gila County Zoning and Development Code appears to require "rural residential" lots to be "not less than one acre," and "general rural" lots to be "not less than three acres." (Doc. 34-10 at 127–28, 130–31.)

1  appraiser acknowledged that the comparable parcels differed in several aspects from the
2  land for sale, including their zoning, size, and location. (Doc. 34-2 at 29, 38–41.) But the
3  appraiser considered quantitative and qualitative adjustments for each comparable lot
4  before reaching a final conclusion, as is required by the UASFLA. (Doc. 34-2 at 38, 42-43;
5  Doc. 34-9 at 45.)

6  Finally, Plaintiff argues that the appraisal report relied on inaccurate information
7  regarding access to the parcel for sale. (MSJ at 14.) In the "property data" section of the
8  report, the appraiser concluded that the land had "average" accessibility, noting that the
9  property is accessible via Jones Ranch Road. (Doc. 34-2 at 19.) Plaintiff argues, apparently
10 for the first time, that the report fails to consider that "the 0.59 acre parcel is actually
11 landlocked, because the Jones Ranch Road is a private road that has no public easements
12 along it." (MSJ at 14.)

13 Plaintiff, however, fails to demonstrate that accessibility within the meaning of the
14 UASFLA contemplates legal encumbrances. The UASFLA does not specifically define
15 "access," but it does provide examples such as "topographical constraints or distance to
16 road or rail line." (Doc. 34-9 at 63.) Without a showing from Plaintiff that the land's
17 accessibility is affected by a lack of easements, the Court cannot conclude that the appraiser
18 erred in finding the property accessible.

19 Ultimately, Plaintiff fails to show that the appraiser did not comply with the
20 UASFLA in deciding the highest and best use of the land, determining a consistent zoning,
21 finding appropriate comparable sales, or analyzing the land's accessibility. And even if
22 Plaintiff could show some error in the appraisal process, he fails to show exactly how any
23 of the alleged errors would change the ultimate valuation of $27,000 for the 0.59 acres of
24 land. Accordingly, the Court concludes that Defendants did not arbitrarily or capriciously
25 accept the appraisal.

26 **C.    Summary Judgment**

27 Although Defendants ask the Court in their brief "to enter judgment in the
28 government's favor and dismiss this action," the only Motion before the Court is Plaintiff's.

However, "[e]ven when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'" *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 553 (9th Cir. 2003) (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)). After considering Plaintiff's Motion and Reply, and examining the administrative record, the Court finds that Plaintiff has had a "full and fair opportunity to ventilate the issues involved." The Court will therefore deny Plaintiff's Motion for Summary Judgment and enter summary judgment *sua sponte* in favor of Defendants.

**IT IS THEREFORE ORDERED** denying Plaintiff Charley Johnson's Motion for Summary Judgment and Memorandum of Law in Support Thereof (Doc. 33).

**IT IS FURTHER ORDERED** granting summary judgment in favor of Defendants.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment in favor of Defendants and to close this case.

Dated this 26th day of February, 2024.

Honorable John J. Tuchi
United States District Judge